**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| TIFFANY JOHNSON, | * |
| *On behalf of herself individually and similarly situated persons*, | * |
| | * |
| Plaintiff, | |
| v. | *   Civil Action No. 8:22-cv-02001-PX |
| CONTINENTAL FINANCE COMPANY, LLC, et. al., | * |
| | * |
| Defendants. | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Defendants Continental Finance Company, LLC and Continental Purchasing, LLC (collectively "Defendants"), by its undersigned counsel and pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, hereby submit their Answer and Affirmative Defenses to the First Amended Class Action Complaint filed by Plaintiff Tiffany Johnson ("Plaintiff") as follows:

**NATURE OF THE ACTION**[1]

1.      Plaintiff, Tiffany Johnson, brings this action to challenge abusive and unlawful high-interest consumer loan origination and collection practices.

**ANSWER**:  **Defendants deny the allegations in Paragraph 1.**

---

[1] Defendants use certain subject headings from Plaintiff's First Amended Class Action Complaint strictly for ease of reference by the Court and the parties and, by using those headings, does not intend to admit the truth of any allegation contained within them. To the extent that any of the subject headings in Plaintiffs' Complaint may be construed to contain factual allegations directed to Defendants, Defendants expressly deny all such allegations.

1

2.      The affiliated Defendants Continental Finance Company, LLC ("CFC") and its wholly owned subsidiary Continental Purchasing, LLC ("CP") (CFC and CP are collectively, "Continental") are predatory high-interest small-loan lenders, who originate credit by marketing, making, servicing, and collecting on consumer credit card loans in violation of Maryland law.

**ANSWER**:  **Defendants deny the allegations in Paragraph 2.**

3.      Continental regularly offers and extends consumer credit to Marylanders including Plaintiff Johnson. Although Continental is domiciled outside of Maryland, the applications for the loans for the Maryland-resident Plaintiff and Class Members originated in Maryland and Plaintiff and Class Members accepted and used the credit cards associated with the loans in Maryland.

**ANSWER**:  **Defendants deny the allegations in Paragraph 3.**

4.      Continental attempted to evade Maryland law by arranging for a third-party financial institution to issue the credit cards for Plaintiff and others, even though Continental marketed the loan accounts, underwrote the loan accounts, collected all payments on the loan accounts, and always bore all of the risk of the credit transactions — but Maryland's Legislature and Court of Appeals have seen through and prohibited such schemes.

**ANSWER**:  **Defendants deny the allegations in Paragraph 4.**

5.      In particular, Maryland law requires persons who arrange and collect on loans, like Continental, to be licensed.

**ANSWER**:  **Defendants deny the allegations in Paragraph 5.**

6.      This is no secret. In *Cash Call, Inc. v. Maryland Com'r of Fin. Regulation,* 448 Md. 412, 439 (2016) *("CashCall"),* the Maryland Court of Appeals confirmed that the longstanding terms of the Maryland Credit Services Businesses Act, Md. Code Ann., Com. Law §§ 14-1901 *et seq.* (the "MCSBA") apply to persons utilizing a scheme like Continental. *CashCall* addressed a

lending setup virtually identical to Continental's and explained why Maryland law required a loan broker like Continental to be licensed. *CashCall* also held that a person arranging and then collecting on loans, like Continental has done here, is the *de facto* lender in the transaction.

**ANSWER**:  **Defendants only admit that the *CashCall* opinion is a document that speaks for itself. Defendants deny any allegations that are inconsistent with or mischaracterize this document.  Defendants deny the remaining allegations in Paragraph 6.**

7.      As a result, at least two Maryland statutes require Continental to be licensed — the Maryland Credit Services Businesses Act, Md. Code Ann., Com. Law §§ 14-1901 *et seq.* (the "MCSBA") and the Maryland Consumer Loan Law, Md. Code Ann., Com. Law §§ 12-301 *et seq.* (the "MCLL").

**ANSWER**:  **Defendants admit only that the referenced statutes speak for themselves. Defendants deny any allegations that are inconsistent with or mischaracterize the statutes. Defendants deny the remaining allegations in Paragraph 7.**

8.      The MCSBA regulates all "credit services businesses" who, like Continental, are paid for arranging extensions of credit by others. *See* MCSBA § 14-1901; *see also CashCall.* In Plaintiff and Class Members' transactions, Continental, with respect to an extension of credit by a third-party financial institution, provided, performed, or represented that it could or would sell, provide, or perform, the service of obtaining an extension of credit for the consumer Plaintiff and Class Members.

**ANSWER**:  **Defendants deny that Defendants extend credit.  Defendants admit only that the referenced statutes speak for themselves.  Defendants deny any allegations that are inconsistent with or mischaracterize the statutes.  Defendants deny the remaining allegations in Paragraph 8.**

3

9.     Continental offered or agreed to sell, provide, or perform services to Plaintiff and Class Members, who are all residents of this State. In addition, Continental makes written solicitations or communications that are received in Maryland, by Maryland residents. Accordingly, the MCSBA requires Continental, like all credit services businesses providing services to Marylanders, to be licensed. *See* MCSBA § 14-1903.

**ANSWER**:  **Defendants deny the allegations in Paragraph 9.**

10.     Continental does not have the license prescribed by, and required by, the MC SBA.

**ANSWER**:  **Defendants deny the allegations in Paragraph 10.**

11.     Because Continental arranged loans for Plaintiff and Class Members without a license, under purported contracts with Plaintiff and Class Members which did not contain the disclosures and terms required by the MCSBA, the contracts are void and unenforceable as contrary to the public policy of Maryland. *See, e.g.,* MCSBA § 14-1907.

**ANSWER**:  **Defendants deny the allegations in Paragraph 11.**

12.     That is not all. Continental was the *de facto* lender in Plaintiff and Class Members' transactions, all of which are subject to the MCLL — and so Continental was also required to be licensed under the MCLL. It was not. As a result, the loans to Plaintiff and Class Members are void and unenforceable, and Continental cannot receive or retain any payments on those loans.

**ANSWER**:  **Defendants deny the allegations in Paragraph 12.**

13.     In particular, Continental received, through contracts with the third-party financial institutions extending the credit to Plaintiff and Class Members, the exclusive right to collect all payments of principal, interest and fees from Plaintiff and Class Members, including setup and maintenance fees which were assessed before Plaintiff and Class Members used their credit cards. As a result, Continental was the *de facto* lender in Plaintiff and Class Members' transactions. *See*

*Cash Call,* 448 Md. at 436 (where a credit services business "received, through contracts with the banks, the exclusive right to collect all payments of principal, interest and fees, including the origination fee... [t]his arrangement, in essence, rendered CashCall [the credit services business] the *de facto* lender."). Continental extended credit to Plaintiff and each Class Member and made the loans to Plaintiff and each Class Member.

**ANSWER**: **Defendants deny the allegations in Paragraph 13.**

14.     The MCLL regulates all loans under $25,000 that do not qualify for the limited exceptions to the application of the statute. *See* MCLL § 12-303. All of Continental's loans to Plaintiff and Class Members were for less than $25,000 and none of the loans to Plaintiff and Class Members qualify for any of the limited exceptions to the application of the MCLL.

**ANSWER**: **Defendants deny that Defendants extend credit.  Defendants admit only that the referenced statutes speak for themselves.  Defendants deny any allegations that are inconsistent with or mischaracterize the statutes.  Defendants deny the remaining allegations in Paragraph 14.**

15.     Continental has made numerous loans to Maryland residents, loans which are regulated by the MCLL, in each of the last three years and for many years prior to that. It is engaged in the business of making loans regulated by the MCLL.

**ANSWER:  Defendants deny the allegations in Paragraph 15.**

16.     The MCLL prohibits making loans within its auspices without a license. *See* MCLL § 12-314(a) ("A person may not lend $25,000 or less if ... [t]he person is not licensed under or exempt from the licensing requirements under the Maryland Consumer Loan Law-Licensing Provisions.").

**ANSWER**: **Defendants admit only that the referenced statute speaks for itself. Defendants deny any allegations that are inconsistent with or mischaracterize the statute.**

17.     Because Continental made loans subject to the MCLL to Plaintiff and Class Members without a license, those loans are "void and unenforceable." *See* MCLL § 12-314(b) ("A loan made in the amount of $25,000 or less, regardless of whether the loan is or purports to be made under this subtitle, is void and unenforceable if... [a] person who is not licensed under or exempt from the licensing requirements under Title 11, Subtitle 2 of the Financial Institutions Article made the loan.").

**ANSWER**: **Defendants deny the allegations in Paragraph 17.**

18.     And Continental may not "receive or retain" any amounts from Plaintiff or Class Members in connection with its void and unenforceable loans to them. *See* MCLL § 12-314(b)(2) ("A person may not receive or retain any principal, interest, fees, or other compensation with respect to any loan that is void and unenforceable under this subsection.").

**ANSWER**: **Defendants deny the allegations in Paragraph 18.**

19.     Accordingly, Maryland law prohibits Continental from collecting any amounts on its loans to Plaintiff and Class Members.

**ANSWER**: **Defendants deny the allegations in Paragraph 19.**

20.     Nevertheless, Continental unlawfully collected and retained money from Plaintiff and Class Members on their loan accounts, in violation of Maryland law.

**ANSWER**: **Defendants deny the allegations in Paragraph 20.**

21.     Maryland's Legislature has imposed harsh consequences for non-bank lenders — like Continental — who partner with a bank or other federally insured third-party financial institution in order to avoid state interest-rate caps, but do not comply with other applicable

Maryland laws. The Maryland Court of Appeals has characterized similar arrangements as "rent-a-bank" schemes. *See CashCall,* 448 Md. at 420 (2016).

**ANSWER**:  **Defendants admit only that the referenced Maryland laws speak for themselves.  Defendants deny any allegations that are inconsistent with or mischaracterize the laws.  Defendants deny the remaining allegations in Paragraph 21.**

22.     Yet Continental repeatedly flouted and disregarded applicable Maryland law and arranged and collected on consumer loans from Plaintiff and each Class Member in return for substantial compensation, without a Maryland license, frustrating the protections enacted by the General Assembly, evading regulatory oversight, damaging Plaintiff and Class Members, and obtaining an unfair advantage over its licensed and regulated competitors in the process.

**ANSWER**:  **Defendants deny the allegations in Paragraph 22.**

23.     As a result of the facts alleged in this Complaint, Plaintiff and each Class Member are entitled to a declaration that Maryland law requires Continental to be licensed, that the contracts for Continental's services are void and unenforceable, that the Plaintiff and Class Members' Continental loan accounts are void and unenforceable, and that Continental was never entitled to collect any amounts from Class Representative and Class Members, under Maryland's Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. §§ 3-401 *et seq.*

**ANSWER**:  **Defendants deny the allegations in Paragraph 23.**

24.     In addition, Continental must return all payments made to it by Plaintiff and Class Members within the past twelve years, under the MCLL.

**ANSWER**:  **Defendants deny the allegations in Paragraph 24.**

25.     Because Defendants' activities were form-driven and violate the law in materially uniform ways in the transactions of the Plaintiff and the numerous others, this lawsuit is well-suited for class action treatment.

**ANSWER**:  **Defendants deny the allegations in Paragraph 25.**

26.     Accordingly, Plaintiff requests certification of the following Class:

a.      All Maryland residents who obtained loans in the amount of $25,000 or less, where the loan application originated in Maryland and where Continental received, through agreements with a third-party financial institution, the exclusive right to collect all payments of principal, interest and fees on the loan.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 26 may be certified.**

27.     Excluded from the Class are all employees or representatives of Continental, all Court personnel, and all persons where the loan at issue was originated more than 12 years ago and no payments have been made on the account within the last 12 years.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 27 may be certified.**

## Parties

28.     Plaintiff is a natural person who is a resident and citizen of the State of Maryland, and who was a resident of the State of Maryland and within the state of Maryland at the time she entered into any agreement with Continental.

**ANSWER**:  **Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 28 and therefore deny those allegations.**

29.     Continental Finance Company, LLC is a privately-held subprime credit card loan originator, marketer, and servicer. It is a limited liability company organized in Delaware, with its

principal place of business in Delaware. CFC markets, underwrites and services credit card accounts in Maryland and elsewhere in the United States.

**ANSWER**:  **Defendants deny that CFC is a subprime credit card loan originator, marketer, and servicer. Defendants admit that CFC is organized in Delaware, with its principal place of business in Delaware. Defendants admit that CFC, on behalf of, and under the supervision of the issuing bank, markets and services credit card accounts in Maryland and elsewhere in the United States.**

30.     Continental Purchasing, LLC is a wholly-owned subsidiary of Continental Finance Company, LLC. Under receivables purchase agreements, Continental Purchasing, LLC agreed in advance of the origination of Plaintiff's and Class Members' accounts to purchase all of the rights, title, and interest in the receivables of Plaintiff's and Class Members' accounts promptly after origination, and did so.

**ANSWER**:  **Defendants deny the allegations in Paragraph 30.**

**Jurisdiction and Venue**

31.     Continental removed this lawsuit from the Circuit Court for Montgomery County to this Court asserting that federal jurisdiction exists over this lawsuit, and that venue is appropriate in this Court. *See* ECF # 1.

**ANSWER**:  **Defendants admit that the U.S. District Court of Maryland has subject matter jurisdiction and personal jurisdiction over this matter for the reasons addressed in Defendants' Notice of Removal, ECF. No. 1.  Defendants deny the remaining allegations in Paragraph 31.**

**Factual Allegations for Individual and Class Relief**

***Continental's Business***

32.     Continental marketed, originated, serviced, and collected on Plaintiff and Class Members' credit card loan products, and extended credit to Plaintiff and Class Members, all in exchange for compensation, but Continental has no license to do so under Maryland law.

**ANSWER**:  **Defendants deny the allegations in Paragraph 32.**

33.     Continental is a small-loan lender. Credit limits on its accounts are all less than $6,000. Continental targets subprime customers and engages in predatory lending designed to lure borrowers with low credit ratings to enter into illegal loan agreements with onerous terms.

**ANSWER**:  **Defendants deny the allegations in Paragraph 33.**

34.     Continental's business operations described in this Complaint violate Maryland law. Continental has an experienced compliance and legal department, which knows that Continental's credit business is in violation of Maryland law. Continental has employed specific strategies to thwart enforcement of Maryland law on its operations, including the sham "rent-a-bank" scheme described in this Complaint which Continental created and operates in order to provide Continental with the pretense that a federally-insured bank or financial institution is involved in its lending operations and that Continental can use the federally-insured institution to evade Maryland lending laws and profit from doing so.

**ANSWER**:  **Defendants deny the allegations in Paragraph 34.**

***Continental Advertises Its Credit Cards as Tools to Improve Credit Ratings***

35.     Continental targets its advertising to encourage consumer borrowers who are trying to rebuild their credit to obtain a Continental credit card in order to improve their credit records, histories, and ratings.

**ANSWER**:  **Defendants deny the allegations in Paragraph 35.**

36.    Continental marketed its credit cards to Plaintiff Johnson and Class Members using a variety of means, including direct mail, e-mail, marketing through affiliates, and the Internet.

**ANSWER**:  **Defendants deny the allegations in Paragraph 36.**

37.    Continental advertises that "we understand how to help people improve their credit score by giving them an opportunity when other companies won't."

**ANSWER**:    **Defendants admit only that CFC's marketing speaks for itself. Defendants deny all allegations that are inconsistent with or mischaracterize CFC's marketing.**

38.    Continental's marketing includes a blog called the "Continental Finance Blog" which advertises that it is providing advice on "HOW TO BUILD AND MAINTAIN GOOD CREDIT."

**ANSWER**:  **Defendants admit only that the language on CFC's marketing speaks for itself.  Defendants deny all other allegations that are inconsistent with or mischaracterize this language.**

39.    Continental advertises that it is the "company mission to help cardholders everywhere rebuild and restore their credit."

**ANSWER**:  **Defendants admit only that the language on CFC's website speaks for itself.  Defendants deny all other allegations that are inconsistent with or mischaracterize this language.**

40.    Continental advertises that it provides advice and assistance on "how to boost your credit score fast" including "how to increase credit score," "how quickly you can improve your credit score," "tips on how to raise credit score in 30 days" and "best ways to boost your credit score."

**ANSWER**:  Defendants admit only that the language on CFC's blog and on its website speaks for itself.  Defendants deny all other allegations that are inconsistent with or mischaracterize this language.

41.    Continental advertises that "If you have less than perfect credit, a CFC brand card can help you re-establish your credit history!"

**ANSWER**:  Defendants admit only that CFC's marketing speaks for itself. Defendants deny all allegations that are inconsistent with or mischaracterize this language.

42.    Continental advertises that "Continental Finance is one of the leading providers of credit cards for people with less-than-perfect credit. They can help you get closer to qualifying for a rewards card over time. This blog and other educational resources will help you qualify for a card and then use the card responsibly to help mend your credit."

**ANSWER**:  Defendants admit only that the language on CFC's website and its blog speaks for itself.  Defendants deny all other allegations that are inconsistent with or mischaracterize this language.

43.    Continental advertises that "Continental Finance cards" provide ***"Credit-building features"*** and further advertises that:

One of the best credit-building features that all Continental Finance cards provide is:

Regular and frequent account reviews for credit limit increases. Simply make your first six required monthly minimum payments on-time and you'll be eligible for an automatic review for a credit limit increase.

Beyond Credit Limit Increases, the card has more features to assist with building credit, including:

Monthly reporting to the three major credit bureaus.

There is also a $0 Fraud liability feature to help protect you from fraudulent charges and keep your credit history positive.

The 24/7 online customer platform gives you custom alerts to help you keep up with payments, avoid late fees and ensure your credit building efforts stay on track.

You'll also get free online access to your credit score each month by signing up for e-statements in the customer platform.

**ANSWER**:  **Defendants admit only that the language on CFC's blog and its website speaks for itself.   Defendants deny all allegations that are inconsistent with or mischaracterize this language.**

44.     Continental advertises that it offers access to credit to consumers, including consumers in Maryland.

**ANSWER**: **Defendants admit that CFC markets and services credit cards on behalf of, and with the approval of, the issuing bank. Defendants deny any remaining allegations set forth in Paragraph 44.**

45.     Continental advertises that it is a "financing solution" for consumers who do not meet the criteria for "prime" credit. It advertises that it is a "Leading Provider of Non-Prime Consumer Financial Solutions." It advertises that "[w]e specialize in servicing 'second-look financing' for consumers who are turned down by a prime lender, yet are just slightly below the prime threshold, and by servicing direct-to-consumer credit cards for consumers who are establishing or rebuilding their credit."

**ANSWER**:  **Defendants deny the allegations in Paragraph 45.**

46.     Continental advertises that it "is the largest provider in the near-prime financial services space, having originated $6 Billion in assets to date and processing 12 Million applications annually. Our Private Label Credit Card (PLCC) business has achieved over $2.6 Billion in originations and has experienced over 40% growth since 2018."

**ANSWER**:  **Defendants deny the allegations in Paragraph 46.**

47.     Continental advertises that its services help consumers to "rebuild" credit. It advertises that its products give consumers the "opportunity to build and access credit."

**ANSWER**:  **Defendants deny the allegations in Paragraph 47.**

48.     Continental advertises that "[w]e specialize in providing credit cards that help our customers build or establish credit with dignity and respect. If you have less than perfect credit, a CFC brand card can help you re-establish your credit history!"

**ANSWER**:  **Defendants deny the allegations in Paragraph 48.**

49.     Continental advertises that "With our help, non-prime consumers can buy quality products and services without depleting their savings account."

**ANSWER**:  **Defendants deny the allegations in Paragraph 49.**

50.     Continental advertises that it "provide [s] accounts to consumers when primary lenders cannot."

**ANSWER**:  **Defendants deny the allegations in Paragraph 50.**

51.     Continental advertises that it "provid[es] non-prime consumers a second chance to access quality financing solutions and direct-to-consumer credit cards."

**ANSWER**:  **Defendants deny the allegations in Paragraph 51.**

52.     Continental advertises that "[w] e pride ourselves on offering the same credit experience to non-prime customers that prime customers receive."

**ANSWER**:  **Defendants deny the allegations in Paragraph 52.**

***Continental Uses A Rent-A-Bank Scheme to Obtain Credit for Plaintiff and Class Members***

53.     Continental developed a credit origination engine that, for Continental, ensures profits and eliminates risks. Drawing upon expertise in credit data analysis, mass marketing and debt collection, Continental built a specialized business model which enables it to prosper by purportedly "serving" — but in fact victimizing — poor and disadvantaged consumers.

14

Continental's business is to extend small credit card loans with high fees and interest rates to borrowers with low credit ratings by using third-party financial institutions, with the promise to the borrowers that these loans will improve the borrowers' credit ratings. In fact, Continental's lending practices place these vulnerable consumers into more debt and aggravate the consumers' credit problems by increasing their indebtedness and imposing illegal lending terms.

**ANSWER**: **Defendants deny the allegations in Paragraph 53.**

54.     In order to conceal the unlawful nature of extensions of credit, Continental partnered with third-party financial institutions, which are in some cases exempt from many Maryland lending laws, as part of a "rent-a-bank" scheme.

**ANSWER**: **Defendants deny the allegations in Paragraph 54.**

55.     To effectuate this scheme, Continental agreed with the third-party financial institutions in agreements including "Program Agreements," that Continental would market credit cards to, and solicit credit card applications from, consumers like Plaintiff and Class Members.

**ANSWER**: **Defendants deny the allegations in Paragraph 55.**

56.     Under the contracts between Continental and its third-party financial institution partners, including the Program Agreements, Continental is the true lender in the transactions of Plaintiff and Class Members.

**ANSWER**: **Defendants deny the allegations in Paragraph 56.**

57.     For example, Continental agreed in advance with its third-party financial institution partners that Continental would perform the marketing for the credit card accounts of Plaintiff and Class Members. Under Continental's agreements with its third-party financial institution partners, Continental marketed via direct mail, and through various modes of internet marketing. Continental prepared the product offerings and associated marketing materials, developed and

placed electronic and print advertising, designed and developed websites, and delivered all notices and disclosures to Plaintiff and Class Members. Continental alone was responsible for all costs and expenses associated with advertising and developing promotional materials in connection with the loans to Plaintiff and Class Members.

**ANSWER**:  **Defendants admit only the allegations in Paragraph 57, except that all advertising and development of promotional materials was performed under the oversight and approval of the issuing bank, the expenses for which are sustained by the issuing bank. Defendants deny the remaining allegations in Paragraph 57.**

58.     Continental also agreed in advance with its third-party financial institution partners that Continental would provide the analytics, software, and underwriting models to underwrite the loans resulting from its marketing efforts, and that Continental would perform the underwriting for the credit card accounts resulting from its marketing efforts. Continental developed its own credit models for underwriting, based on data concerning prior Continental customers. As part of Continental's underwriting, it considered the risk of customers missing payments, the likelihood that a borrower would use a Continental credit card for a cash advance instead of a purchase, the borrower's history with other Continental credit cards, and other factors. Continental underwrote the loans of Plaintiff and Class Members. Continental alone was responsible for all costs and expenses associated with underwriting the loans to Plaintiff and Class Members.

**ANSWER**: **Defendants deny the allegations in Paragraph 58.**

59.     Continental provided the loan application for Plaintiff and each Class Member. Continental processed all loan applications from Plaintiff and each Class Member to determine whether the Plaintiff and each Class Member met eligibility criteria for the extension of credit, responded to all inquiries regarding the credit origination and application process, delivered all

16

documents to Plaintiff and Class Members in the course of the credit origination and application process, and maintained all documents pertaining to the loans to Plaintiff and each Class Member.

**ANSWER**:  **Defendants admit that, on behalf of, and with the prior approval of the issuing bank, CFC provided Plaintiff the loan application, processed the loan application, responded to inquiries regarding the application process, delivered all documents to Plaintiff in the course of the application process, and maintained all documents pertaining to the loans to Plaintiff. Defendants deny that they determined whether Plaintiff met eligibility criteria for the extension of credit. Defendants deny the remaining allegations in Paragraph 59.**

60.     Continental, in Plaintiff and each Class Member's transaction, also conducted credit risk assessment and loan underwriting.

**ANSWER**:  **Defendants deny the allegations in Paragraph 60.**

61.     Continental determined that Plaintiff and each Class Member satisfied the criteria required for an extension of credit and determined the amount of each extension of credit.

**ANSWER**:  **Defendants deny the allegations in Paragraph 61.**

62.     Continental evaluated and approved the credit application for Plaintiff and each Class Member.

**ANSWER**:  **Defendants deny the allegations in Paragraph 62.**

63.     Continental determined the amount of credit to be extended to Plaintiff and each Class Member.

**ANSWER**:  **Defendants deny the allegations in Paragraph 63.**

64.     Continental approved the extension of credit to Plaintiff and each Class Member.

**ANSWER**:  **Defendants deny the allegations in Paragraph 64.**

65.     Continental drafted and provided the credit account agreements for Plaintiff and each Class Member. Continental's form adhesion loan "agreement" documents included language stating that the terms of the agreement could be changed at any time, without any notice, and with retroactive effect.

**ANSWER**:  **Defendants admit only that CFC provided the issuing bank's credit account agreements to Plaintiff on behalf of the issuing bank, and that each applicable agreement speaks for itself. Defendants deny all allegations that are inconsistent with or mischaracterize any agreement. Defendants deny the remaining allegations in Paragraph 65.**

66.     Although Continental is the true lender in the transactions of Plaintiff and Class Members, Continental does not issue the credit cards it advertises. Instead, Continental represented to Plaintiff and each Class Member that the credit account would be issued, and credit initially extended, by a third-party financial institution. Those accounts were issued under Continental's oversight and Continental's contracts with its third-party financial institution partners, at Continental's request, in the amount requested by Continental.

**ANSWER**:  **Defendants deny the allegations in Paragraph 66.**

67.     Under Continental's advance agreements with its third-party financial institution partners, Continental promptly after account issuance purchases the right to fund the credit and collect all payments on the credit card accounts it arranged for Plaintiff and each Class Member.

**ANSWER**:  **Defendants deny the allegations in Paragraph 67.**

68.     Continental promptly purchased Plaintiff's and each Class Member's credit account receivables from its third-party financial institution partner, and thereafter extended all credit and collected all payments on Plaintiff's and Class Members' accounts unless and until the accounts were charged-off and sold to one of Continental's debt buyers. Continental directed

Plaintiff and each Class Member to make payments to Continental, not Continental's third-party financial institution partner.

**ANSWER**:   **Defendants admit only that Defendant CP purchased the receivables associated with the Plaintiff's credit card account from the issuing bank. Defendants deny the remaining allegations in Paragraph 68.**

69.     Continental arranged with its third-party financial institution partners, in advance of originating the credit accounts for Plaintiff and Class Members, that Continental would advertise and market for the credit accounts, that it would handle all of the work necessary to originate the credit accounts, would service the credit accounts after origination, and that it would be entitled to collect and receive all payments made on the credit accounts, despite the fact that the credit accounts were issued by Continental's third-party financial institution partner.

**ANSWER**:   **Defendants admit only that Defendant CFC arranged with the issuing bank to advertise, market, and service credit accounts on behalf of, and under the oversight of the issuing bank, and that Defendant CFC is entitled to collect and receive payments made on the credit accounts on behalf of the issuing bank.  Defendants deny the remaining allegations in Paragraph 69.**

70.     Continental managed all the operations relating to the submission of credit applications by Plaintiff and each Class Member and the extension of credit to Plaintiff and each Class Member, in exchange for a fee.

**ANSWER**:  **Defendants deny the allegations in Paragraph 70.**

71.     Continental had agreed, in advance, to collect all payments, interest and fees due on the credit accounts of Plaintiff and each Class Member.

**ANSWER**:  **Defendants admit the allegations in paragraph 71, provided that any such services are performed on behalf of, and under the oversight of, the issuing bank.**

72.    Continental, not its third-party financial institution partners, collected all sums — including fees — from Plaintiff and each Class Member. Continental also charged interest to Plaintiff and each Class Member, and collected interest from Plaintiff and each Class Member

**ANSWER**:  **Defendants admit only that any services performed by Defendant CFC on behalf of the issuing bank, and any fees charged to Plaintiff by the issuing bank are in accordance with the issuing bank's credit account agreement with the Plaintiff. Defendants deny the remaining allegations in Paragraph 72.**

73.    Continental serviced and administered each loan to Plaintiff and each Class Member. This servicing and administration included issuing statements, payment processing, collections customers service, refunds and adjustments, customer disputes, and other services.

**ANSWER**:  **Defendants admit the allegations set forth in Paragraph 73.**

74.    Continental undertook to recover and collect the maximum payment of interest and principal possible from Plaintiff and Class Members, for its own benefit.

**ANSWER**:  **Defendants deny the allegations in Paragraph 74.**

75.    Plaintiff and Class Members made all payments on the credit accounts originated by Continental to Continental, unless and until their loans were "charged off" and sold at a discount to a debt-buyer debt collector.

**ANSWER**:  **Defendants deny the allegations in Paragraph 75.**

76.    The only contact Plaintiff and Class Members had with Continental's third-party financial institution partners in connection with their credit accounts through Continental was the partner's name on the credit agreement.

**ANSWER**:  **Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 76 and therefore deny those allegations.**

77.     In exchange for Continental's role in assisting Plaintiff and Class Members to obtain credit accounts, Continental received, through its contracts with its third-party financial institution partners, the exclusive right to collect all payments of principal, interest and fees, from Plaintiff and each Class Member. This arrangement rendered Continental the *de facto* lender; the true lender. Continental's reason for existence was to profit by purportedly providing advice and assistance to consumers, including Plaintiff and Class Members, in obtaining loans nominally from a third-party financial institution, so that Continental would receive, in reciprocation, the legal right to receive payments from Plaintiff and Class Members.

**ANSWER**:  **Defendants deny the allegations in Paragraph 77.**

78.     This arrangement has been a lucrative business for Continental.

**ANSWER**:  **Defendants deny the allegations in Paragraph 78.**

79.     Continental provided Plaintiff and each Class Member with advice or assistance in the obtention of an extension of credit by others, and was compensated for doing so by collecting money including fees directly from Plaintiff and each Class Member.

**ANSWER**:  **Defendants deny the allegations in Paragraph 79.**

80.     Not only did Continental broker the Plaintiff's and Class Members' extensions of credit without a license, Continental *de facto* brokered the loans to itself, deceptively disguising the loans as legitimate loans.

**ANSWER**:  **Defendants deny the allegations in Paragraph 80.**

81.     Although the Plaintiff's and Class Members' loans were purportedly initially issued by its third-party financial institution partner, Continental exerted control and ownership over

those loans. Continental carried out all interactions with the Plaintiff and each Class Member, accepted the ultimate credit risk, collected and pocketed the finance charges and fees, and owned and controlled the branding of the credit accounts, which were only available through Continental. Continental was in fact the primary lender, creditor and collector in connection with the loans that it made to Plaintiff and each Class Member.

**ANSWER**:  **Defendants deny the allegations in Paragraph 81.**

82.     Continental had the predominant economic interest in the loans it provided to Plaintiff and Class Members.

**ANSWER**: **Defendants deny the allegations in Paragraph 82.**

83.     Continental formed its arrangement to have third-party financial institutions issue the credit cards it advertises and collects on as part of a specific effort to avoid state lending laws — including Maryland's lending laws.

**ANSWER**:  **Defendants deny the allegations in Paragraph 83.**

84.     At all material times, Continental knew or acted with reckless disregard to the fact that it could not legally extend credit, because, as Continental knows and always knew, the terms of the credit card loans it markets, underwrites, funds and services are in violation of the laws of many states — including Maryland's.

**ANSWER**:  **Defendants deny the allegations in Paragraph 84.**

85.     Indeed, in connection with securitizations collateralized by Continental's credit card account receivables, Continental hired a bond rating agency which observed that the securities are risky because if a court finds that Continental is the "true lender" because of its arrangement to market and purchase credit card receivables from third-party financial institutions, the credit

card receivables could be legally unenforceable; but also observed that the short life of the credit accounts and the quickly revolving nature of the credit accounts mitigated those risks.

**ANSWER**:  **Defendants deny the allegations in Paragraph 85.**

86.     In other words, Continental knows that its loans are illegal, but perceives that it can get away with its illegally lending scheme because no one is likely to notice when Continental is extending small-dollar credit card loans to low income, credit-impaired consumers.

**ANSWER**:  **Defendants deny the allegations in Paragraph 86.**

### *The Continental Entities Conspired to Conduct Illegal Activity*

87.     Continental's unlawful conduct described in this Complaint was the result of a conspiracy involving CFC and CP and other entities owned or operated by CFC, and third-party financial institutions.

**ANSWER**:  **Defendants deny the allegations in Paragraph 87.**

88.     CFC and CP entered into multiple agreements under which the entities conspired, agreed, and aided and abetted the illegal conduct of the others.

**ANSWER**:  **Defendants deny the allegations in Paragraph 88.**

89.     In committing the actions causing injuries and damages to Plaintiff and Class Members, CFC and CP confederated with other persons, including each other, by agreement or understanding. CFC and CP's agreements and understandings with each other included agreements allocating responsibility among CFC and CP and third-party financial institutions for each of the acts alleged in this Complaint — including but not limited to marketing for loan accounts, originating loan accounts, issuing credit cards, taking ownership of loan accounts, servicing loan accounts, and selling loan accounts.

**ANSWER**:  **Defendants deny the allegations in Paragraph 89.**

90.     In furtherance of this conspiracy, CFC and CP each committed numerous unlawful acts, and used unlawful and tortious means to accomplish other acts.

**ANSWER**:  **Defendants deny the allegations in Paragraph 90.**

91.     Among other things, and without limitation, CFC marketed for loan accounts which were represented to Plaintiff and Class Members as accounts with CFC, CFC originated unlawful loan accounts which were represented to Plaintiff and Class Members to be accounts with CFC, and third-party financial institutions issued the credit cards on those accounts. CP purchased the credit card loan account receivables, CFC serviced the unlawful loan accounts it originated, and collected money for itself and CP from Plaintiff and Class Members. By undertaking these acts and others, CFC and CP provided substantial assistance, aid and encouragement to each other, and to the third-party financial institutions issuing the credit cards, in connection with the tortious actions alleged in this Complaint.

**ANSWER**:  **Defendants deny the allegations in Paragraph 91.**

92.     For CP's part, among other things and without limitation, CP contracted with CFC and third-party financial institutions that CFC would market credit card loan accounts to consumers including Plaintiff and Class Members, that the third-party financial institutions would nominally issue the credit cards, and CFC, CP and third-party financial institutions agreed that the third-party financial institutions would continually transfer on an ongoing basis, all of their rights, title, and interest in the account receivables to CP.

**ANSWER**:  **Defendants deny the allegations in Paragraph 92.**

93.     As a result of the conspiracy, Plaintiff and Class Members sustained the actual legal damages alleged herein.

**ANSWER**:  **Defendants deny the allegations in Paragraph 93.**

94.     CFC and CP each had actual knowledge of the wrongful conduct perpetrated by the others in their dealings with the Plaintiff and Class Members, and of the role each played in furthering that conduct.

**ANSWER**:  **Defendants deny the allegations in Paragraph 94.**

95.     In its dealings with Plaintiff and Class Members, CP was acting at all times relevant to the allegations contained in this Complaint as the agent of CFC.

**ANSWER**:  **Defendants deny the allegations in Paragraph 95.**

96.     When perpetrating the acts alleged herein causing injury or damages to Plaintiff and Class Members, CP and the employees and representatives and agents of CFC committed those acts within the scope of the employment or agency, and when performing services for which he or she or it had been engaged, and when acting in furtherance of CFC's interests.

**ANSWER**:  **Defendants deny the allegations in Paragraph 96.**

97.     As a consequence, Plaintiff and the Class have sustained the losses and damages described herein.

**ANSWER**:  **Defendants deny the allegations in Paragraph 97.**

98.     Continental, including both CFC and CP, arranged their associations with third-party financial institutions in furtherance of a conspiracy to perpetrate their unlawful lending and credit services business scheme and to try to circumvent state consumer lending laws, like Maryland's.

**ANSWER**:  **Defendants deny the allegations in Paragraph 98.**

***Continental Does Not Have Any License to Conduct Its Business in Maryland***

99.     Continental does not have any license to conduct its credit services and lending business in Maryland and has never had any license to conduct its credit services and lending business (or any business) in Maryland.

**ANSWER**:  **Defendants deny the allegations in Paragraph 99.**

100.    However, Maryland law requires Continental to be licensed by the Commissioner of Financial Regulation to conduct its credit services and lending business in Maryland. For example, both the MCSBA and the MCLL require Continental to have licenses that it does not have and has never had.

**ANSWER**:  **Defendants admit only that the referenced Maryland laws speak for themselves.  Defendants deny any allegations that are inconsistent with or mischaracterize the laws. Defendants deny the remaining allegations in Paragraph 100.**

***Continental Violated the MCSBA in Class Member Transactions***

101.    Continental, including both CFC and CP, is a "credit services business" under the MCSBA § 14-1901(e)(1)(ii). Continental, with respect to the extension of credit by third-party financial institutions, sold, provided, performed, or represented that it could or would sell, provide, or perform, the following services in return for the payment of money or other valuable consideration: (i) improving a consumer's credit record, history, or rating or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving the consumer's credit record, history, or rating or establishing a new credit file or record; and (ii) obtaining an extension of credit for a consumer, or providing advice or assistance to a consumer with regard to obtaining an extension of credit for the consumer. Continental's advertising about its credit improvement and assistance services are detailed in this Complaint, as are Continental's acts in obtaining extensions of credit for consumers from, or purportedly from, third-party financial institutions.

**ANSWER**:  **Defendants deny the allegations in Paragraph 101.**

102.    CFC and its wholly-owned subsidiary CP have a joint or common interest, including a joint interest in the credit card accounts of Plaintiff and Class Members.

26

**ANSWER**:  **Defendants deny the allegations in Paragraph 102.**

103.    Continental violated numerous mandates of the MCSBA in its dealings with Plaintiff and Class Members.

**ANSWER**:  **Defendants deny the allegations in Paragraph 103.**

104.    Continental received money or other valuable consideration from Plaintiff and Class Members when it had not secured a license from the Maryland Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article, in violation of the MCSBA § 14-1902(1).

**ANSWER**:  **Defendants deny the allegations in Paragraph 104.**

105.    Continental received money and valuable consideration solely for the referral of Plaintiff and Class Members to a credit grantor when the credit extended to the Plaintiff and Class Members was substantially on the same terms as those available to the general public, in violation of MC SBA §14-1902(2).

**ANSWER**:  **Defendants deny the allegations in Paragraph 105.**

106.    Continental never provided to Plaintiff or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Plaintiff or any Class Member the "NOTICE OF CANCELLATION" required under that section.

**ANSWER**:  **Defendants admit only that the referenced Maryland laws speak for themselves.  Defendants deny any allegations that are inconsistent with or mischaracterize the laws. Defendants deny the remaining allegations in Paragraph 106.**

107.    Moreover, Continental was not licensed as required by the MCSBA. Accordingly, it was prohibited from receiving any money or valuable consideration from Plaintiff or any Class Member under the MCSBA § 14-1902(1).

27

**ANSWER**:  Defendants admit only that the referenced law speaks for itself. Defendants deny any allegations that are inconsistent with or mischaracterize the law. Defendants deny the remaining allegations in Paragraph 107.

108.    Furthermore, Continental's purported contracts for services with Plaintiff and each Class Member did not comply with the MCSBA. Accordingly, the purported contracts were void and unenforceable under the MCSBA § 14-1907(b), and Continental was never entitled to enforce any terms of any of those purported contracts or collect any money from Plaintiff or any Class Member in connection with those purported contracts.

**ANSWER**:  Defendants deny the allegations in Paragraph 108.

109.    A credit services business license is subject to the licensing and investigatory provisions of the Maryland Installment Loans — Licensing Provisions, Md. Code Ann., Fin. Inst. §§ 11-301 *et seq.,* which require a license before Continental could make any loans to Plaintiff or Class Members. Continental's lack of the required license means it never had the right to collect any money from Plaintiff or Class Members.

**ANSWER**:  Defendants admit only that the referenced law speaks for itself. Defendants deny any allegations that are inconsistent with or mischaracterize the law. Defendants deny the remaining allegations in Paragraph 109.

110.    In addition, a credit services business license is subject to the provisions of the Maryland Consumer Loans — Licensing Provisions, Md. Code Ann., Fin. Inst. §§ 11-201 *et seq.* For that reason, as well, Continental was never entitled to collect any money from Plaintiff or Class Members.

**ANSWER**:  Defendants admit only that the referenced law speaks for itself. Defendants deny any allegations that are inconsistent with or mischaracterize the law. The

remaining allegations set forth in Paragraph 110 state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 110.

*Continental Violated the MCLL in Class Member Transactions*

111.   Each Class Member transaction involved a loan or advance of money or credit of less than $25,000.00, subject to the MCLL.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 111 may be maintained, or that any transaction is subject to the MCLL.**

112.   Continental made a loan to Plaintiff and each Class Member. Continental did not perform its services in arranging loans with third-party financial institutions for free; it was amply compensated for its loan operation. In exchange for Continental's role in assisting Plaintiff and Class Members to obtain loans, Continental received, through contracts with the third-party financial institutions, the exclusive right to collect all payments of principal, interest and fees, including fees charged for preparing and processing the loans. Indeed, Continental purchased the right from the third-party financial institutions to enforce the terms of the loans to Plaintiff and Class Members, and to collect the payments that were to be made by Plaintiff and Class Members under the terms of the loan, including all interest, penalties, and fees. Indeed, if Plaintiff or Class Members mistakenly sent a loan payment to the third-party financial institution, rather than to Continental, the third-party financial institution was, pursuant to its contract with Continental, obligated to forward that payment to Continental.

**ANSWER**: **Defendants deny the allegations in Paragraph 112.**

113.   The third-party financial institutions never received any payments from Plaintiff or Class Members, Continental did. Continental's *raison d'etre* was to profit by purportedly providing advice and assistance to consumers in obtaining loans from the third-party financial

institutions it had partnered with so that it would receive, in reciprocation, the legal right to receive payments from consumers like Plaintiff and Class Members. Plaintiff and Class Members made direct payments on their loan accounts to Continental. Continental deducted amounts from Plaintiff and Class Members' loans as "fees" which were to pay for the preparation and processing of their loans.

**ANSWER**:  **Defendants deny the allegations in Paragraph 113.**

114.   Plaintiff and Class Members made numerous payments to Continental, including interest, costs, fees and other charges. Continental received and retained Plaintiff and Class Members' payments.

**ANSWER**:  **Defendants admit that Plaintiff made payments to the issuing bank, and that CFC received payments from Plaintiff on behalf of the issuing bank.  Defendants deny the remaining allegations in Paragraph 114.**

115.   Continental is in the business of making loans of less than $25,000.00. In fact, all of its loans to Plaintiff and Class Members are for less than $6,000.00. Continental makes numerous such loans to Marylanders each year.

**ANSWER**:  **Defendants deny the allegations in Paragraph 115.**

116.   Continental does not have a license under the MCLL, as required under MCLL § 12-302.

**ANSWER**:  **Defendants deny that Defendants are required to have a license under the MCLL. Defendants admit the remaining allegations in Paragraph 116.**

117.   None of the loans of Plaintiff or Class Members contain a written election to be governed by Subtitle 1, Subtitle 4, Subtitle 9, or Subtitle 10 of the Maryland Commercial Law Article.

**ANSWER**:  Defendants admit only that the referenced agreements speak for themselves. Defendants deny all allegations that are inconsistent with or mischaracterize the agreement.

118.    Continental was not permitted to make its loans to Plaintiff or Class Members because it is not, and never has been, licensed under or exempt from the licensing requirements under the MCLL.

**ANSWER**:  Defendants deny the allegations in Paragraph 118.

119.    Continental's loans to Plaintiff and each Class Member are void and unenforceable because Continental made the loans without a license under the MCLL, when Continental is not exempt from the licensing requirements of the MCLL.

**ANSWER**:  Defendants deny the allegations in Paragraph 119.

120.    Continental has unlawfully received and retained, and continues to receive and retain, principal, interest, fees, and other compensation with respect to its loans to Plaintiff and Class Members, which are void and unenforceable under the MCLL.

**ANSWER**:  Defendants deny the allegations in Paragraph 120.

121.    Continental is not, and has never been, licensed as required by Maryland law, the statutes requiring Continental to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and Continental's actions described in this Complaint violate the fundamental public policy of Maryland.

**ANSWER**:  Defendants deny the allegations in Paragraph 121.

122.    Continental never had any right to collect money from Plaintiff or Class Members, as a result of Continental's illegal, unlicensed activity.

**ANSWER**:  Defendants deny the allegations in Paragraph 123.

*Plaintiff's Experiences*

123.    Plaintiff, Ms. Johnson, received a credit card loan from Continental in the amount of less than $6,000.00, for consumer, family and household purposes, when Continental did not have a license to make such a loan under Maryland law and when Continental was not exempt from the licensing requirements of Maryland law.

**ANSWER**:  **Defendants deny the allegations set forth in Paragraph 123.**

124.    Ms. Johnson obtained the credit card loan from Continental in Maryland in response to Continental's marketing efforts. Continental took Ms. Johnson's loan application, underwrote it, decided to extend credit to her, and arranged for a credit card to be sent to her.

**ANSWER**:  **Defendants deny the allegations in Paragraph 124.**

125.    Ms. Johnson accepted and used the credit card in Maryland, and made payments on the credit card in Maryland.

**ANSWER**:  **Defendants admit only that Plaintiff used, accepted, and made payments on the credit card. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 125 and therefore deny those allegations.**

126.    Ms. Johnson's credit card was issued by one of Continental's third-party financial institution partners, but Continental — under a pre-existing agreement — promptly purchased and obtained the right to extend and collect all amounts under Ms. Johnson's account.

**ANSWER**:  **Defendants admit only that Defendant CP purchased the receivables related to the subject credit card account from the issuing bank. Defendants deny the remaining allegations in Paragraph 126.**

127.    Continental deducted amounts from Ms. Johnson's loan as "fees" which were to pay for the preparation and processing of her loan.

**ANSWER**:  **Defendants deny the allegations in Paragraph 127.**

128.    Continental's form adhesion documents for Ms. Johnson's loan also included provisions giving Continental the right to unilaterally change any of its agreements with her, at any time, without advance notice or an opportunity for her to reject any changes.

**ANSWER**:  **Defendants deny the allegations in Paragraph 128.**

129.    Ms. Johnson made numerous payments to Continental, including interest, costs, fees and other charges. Continental received and retained her payments. Ms. Johnson never made any payment on the account to the third-party financial institution that issued the loan.

**ANSWER**:  **Defendants admit only that Defendant CFC received Plaintiff's payments as it serviced the Plaintiff's credit card account on behalf of, and with the approval of, the issuing bank. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 129 and therefore deny those allegations.**

### *Class Action Allegations*

130.    The Class, as defined above, is identifiable. The Plaintiff is a member of the Class. The Class is so numerous that joinder of all members is impracticable.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 131 may be certified.**

131.    There are questions of law and fact which are not only common to the members of the Class but which predominate over any questions affecting only individual Class members. The common and predominating questions include, but are not limited to:

        A.    Whether Continental acted as a credit services business under the MCSBA in Class Members' transactions;

B.    Whether Continental failed to make any of the disclosures required by the MCSBA § 14-1906;

C.    Whether Continental was required to be licensed with the Maryland Commissioner of Financial Regulation before engaging in transactions with Plaintiff and Class Members;

D.    Whether Continental's transactions with each Class Member are contrary to the public policy of Maryland;

E.    Whether the statutes requiring Continental to be licensed are regulatory in nature for the protection of the public, rather than merely to raise revenue, and enforcing Class Members' Continental loan accounts is against public policy;

F.    Whether Continental ever had any right to receive or retain any payments on Class Members' loans;

G.    Whether each Class Member is entitled to a declaration under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. §§ 3-401 et seq. and/or the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, that their loan account is void and unenforceable;

H.    Whether each Class Member is entitled to recover all payments made to Continental under the MCLL; and

I.    Whether Plaintiff and each Class Member are entitled to recover the damages and amounts prescribed by the MCSBA.

**<u>ANSWER</u>:  Defendants deny that the Class referenced in Paragraph 131 may be certified. Defendants deny the remaining allegations in Paragraph 131.**

132.    Plaintiff's claims are typical of the claims of the respective members of the Class within the meaning of Md. Rule 2-231(b)(3) and are based on and arise out of similar facts constituting the wrongful conduct of Defendants.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 132 may be certified. Defendants deny the remaining allegations in Paragraph 132.**

133.    Plaintiff will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(b)(4). Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 133 may be certified. Defendants deny the remaining allegations in Paragraph 133.**

134.    Neither Plaintiff nor Plaintiff's counsel has any interests which might cause them not to vigorously pursue this claim.

**ANSWER**:  **Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations set forth in Paragraph 134 and therefore deny those allegations.**

135.    The prosecution of separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants within the meaning of Md. Rule 2-231(c)(1)(A).

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 135 may be certified. Defendants deny the remaining allegations in Paragraph 135.**

136.    Defendants' actions are generally applicable to the respective Class as a whole, and Plaintiff seeks equitable remedies with respect to the Class within the meaning of Md. Rule 2-231(c)(2).

**ANSWER**:   **Defendants deny that the Class referenced in Paragraph 136 may be certified. Defendants deny the remaining allegations in Paragraph 136.**

137.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

**ANSWER**:   **Defendants deny that the Class referenced in Paragraph 137 may be certified. Defendants deny the remaining allegations in Paragraph 137.**

138.    The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

**ANSWER**:   **Defendants deny that the Class referenced in Paragraph 138 may be certified. Defendants deny the remaining allegations in Paragraph 138.**

139.    Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

**ANSWER**:   **Defendants deny that the Class referenced in Paragraph 139 may be certified. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 139 and therefore deny those allegations.**

### Causes of Action

**COUNT I.    Declaratory Relief under Md. Cts. & Jud. Pro. § 3-406**

140.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

**ANSWER**:   **Defendants incorporate their answers to the foregoing paragraphs as if set forth herein in their entirety.**

141.    This claim for declaratory relief is brought under the Maryland Declaratory Judgment Act, Md. Code Ann., Cts. & Jud. Pro. § 3-406, to settle and obtain relief from uncertainty

and insecurity with respect to the rights, status and legal relations of the Plaintiff and Class Members with Defendants, under the consumer protections embodied in Maryland law.

**ANSWER**:  **Defendants deny the allegations in Paragraph 141.**

142.    Defendants maintain that they were not required to have a license from the Maryland Commissioner of Financial Regulation to engage in their transactions with Plaintiff and Class Members.

**ANSWER**:  **Defendants admit only that Defendants are not required to be licensed under MCLL § 12-302. Defendants deny that the Class referenced in Paragraph 142 may be certified. Defendants deny the remaining allegations set forth in Paragraph 142.**

143.    Plaintiff maintains that Defendants were required to have a license from the Maryland Commissioner of Financial Regulation to engage in the transactions with Plaintiff and Class Members.

**ANSWER**: **Defendants deny that the Class referenced in Paragraph 143 may be certified.   Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 143 and therefore deny those allegations.**

144.    Defendants maintain that they did not violate the MCSBA or the MCLL in the transactions of Plaintiff and Class Members.

**ANSWER**: **Defendants deny that the Class referenced in Paragraph 144 may be certified. Defendants admit the remaining allegations set forth in Paragraph 144.**

145.    Plaintiff maintains that Defendants violated the MCSBA and the MCLL in their transactions and the transactions of Plaintiff and Class Members.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 145 may be certified.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 145 and therefore deny those allegations.**

146.    Plaintiff maintains that any purported contract between her and Continental, and between any Class Member and Continental, is void *ab initio* and unenforceable as contrary to the public policy of Maryland, under the MCSBA.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 146 may be certified. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 146 and therefore deny those allegations.**

147.    Defendants maintain that purported contracts between Plaintiff and Continental, and between other Class Members and Continental, are not void *ab initio* and unenforceable as contrary to the public policy of Maryland under the MCSBA.

**ANSWER**: **Defendants deny that the Class referenced in Paragraph 147 may be certified.   Defendants admit the remaining allegations in Paragraph 147.**

148.    Defendants maintain that they and their assignees may assess and collect charges from Plaintiff and Class Members.

**ANSWER**:  **Defendants admit only that Defendant CFC may collect charges from Plaintiff on behalf of the issuing bank, but only the issuing bank may assess such charges pursuant to the credit account agreement.  Defendants deny the remaining allegations in Paragraph 148.**

149.    Plaintiff maintains that Defendants do not have, and never had, the right to assess or collect charges from her, or from Class Members, and that the Defendants never had the right to assign any such rights to anyone else, due to the facts alleged in this Complaint.

38

**ANSWER**:  **Defendants deny that Defendants do not have the right to collect charges from Plaintiff.  Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 149 and therefore deny those allegations.**

150.    Plaintiff and Class Members have received or will receive collection notices from Defendants or their assignees demanding payment of the alleged amounts due and have been sued or will be sued for collection of the sums which Defendants or their assignees claim are due. Moreover, Defendants notify credit reporting agencies of the alleged balances due, thereby damaging the credit scores and history of Plaintiff and Class Members.

**ANSWER**:  **Defendants admit that Defendant CFC has, in the course of servicing the credit card account on behalf of, and under the oversight of, the issuing bank, may send notices to Plaintiff and notify credit reporting agencies of the alleged balances due. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 150 and therefore deny those allegations.**

151.    These practices continue and will continue unless and until this Court declares and affirms that Defendants do not have, and never had, the right to receive or retain money from Plaintiff and Class Members on their loan accounts.

**ANSWER**:  **Defendants deny that there is any wrongdoing associated with their practices. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in Paragraph 151 and therefore deny those allegations.**

152.    This presents an actual, justiciable controversy between the parties relating to the construction of the purported contracts of Plaintiff and Class Members and the application of the law to those purported contracts. Defendants have sought and will continue to seek to collect

amounts from Plaintiff and Class Members when they are not legally entitled to do so. Defendants continue to harm Plaintiff and Class Members by doing so.

**ANSWER**: **Defendants deny the allegations in Paragraph 152.**

153.    Plaintiff and Class Members have a right to be free from the attempts of Defendants to collect amounts from them to which Defendants have no right.

**ANSWER**:  **Defendants deny the allegations in Paragraph 153.**

**COUNT II.    Violation of the MCLL Licensing Provisions**

154.    Plaintiff re-alleges and incorporates by reference the allegations set forth above.

**ANSWER**:  **Defendants incorporate their answers to the foregoing paragraphs as if set forth herein in their entirety.**

155.    Each of the loans to Plaintiff and Class Members which are the subject of this Complaint were for less than $25,000, are extensions of credit or loans subject to the MCLL and are "loans" under the MCLL.

**ANSWER**:   **Defendants admit only that the referenced statute speaks for itself. Defendants deny any allegations that are inconsistent with or mischaracterize the statute. Defendants deny the remaining allegations in Paragraph 155.**

156.    Continental, including CFC and CP, made the loans to Plaintiff and Class Members which are the subject of this Complaint, and thus is a "lender" under the MCLL.

**ANSWER**:  **Defendants deny the allegations in Paragraph 156.**

157.    None of the loans to Plaintiff or Class Members elect to be governed by Subtitle 1, Subtitle 4, Subtitle 9, or Subtitle 10 of Title 12 of the Maryland Commercial Law Article.

**ANSWER**:  **Defendants admit only that the referenced statutes speak for themselves. Defendants deny any allegations that are inconsistent with or mischaracterize the statutes.**

158.     Continental made loans to Plaintiff and Class Members of less than $25,000 when Continental was required to be licensed under MCLL § 12-302, but Continental was not and never has been licensed under or exempt from the licensing requirements of the MCLL.

**ANSWER**:  **Defendants admit only that the referenced statutes speak for themselves. Defendants deny any allegations that are inconsistent with or mischaracterize the statutes. Defendants deny the remaining allegations in Paragraph 158.**

159.     The loans to Plaintiff and Class Members are and always were void and unenforceable under the MCLL.

**ANSWER**:  **Defendants deny the allegations in Paragraph 159.**

160.     Continental was never entitled to receive or retain any principal, interest, fees, or other compensation with respect to any loan to Plaintiff or Class Members, under MCLL § 12-314.

**ANSWER**:  **Defendants deny the allegations in Paragraph 160.**

161.     In violation of the MCLL, Continental, with respect to the Plaintiff's and Class Members' loans that are and always were void and unenforceable, collected and attempted to collect, directly or indirectly, amounts from Plaintiffs and Class Members, and sold, assigned, or otherwise transferred loans of Plaintiff and Class Members to other persons.

**ANSWER**:  **Defendants deny the allegations in Paragraph 161.**

### COUNT III.  Violation of the MCSBA

162.     Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

**ANSWER**:  **Defendants incorporate their answers to the foregoing paragraphs as if set forth herein in their entirety.**

41

163.    Continental is a "credit services businesses" as defined in the MCSBA § 14-1901(e)(1). Among other things, at all times relevant to this Complaint, and as described in this Complaint, Continental, with respect to the extension of credit by others, sold, provided, or performed, or represented that it could or would sell, provide, or perform, services in return for the payment of money or other valuable consideration, including improving Plaintiff's and Class Members' credit records, histories, or ratings, and providing advice or assistance to a consumer with regard to improving Plaintiff's and Class Members' credit records, histories, or ratings or establishing a new credit files or record, and obtaining an extension of credit for Plaintiff and Class Members, and providing advice or assistance to Plaintiff and Class Members with regard to obtaining an extension of credit for the Plaintiff and Class Members.

**ANSWER**:  **Defendants deny the allegations in Paragraph 163.**

164.    In particular, as alleged above, Continental advertised its credit cards as tools to improve Plaintiff's and Class Members' credit ratings and used its rent-a-bank scheme to obtain extensions of credit for Plaintiff and Class Members, all in exchange for the payment of the fees and other amounts Continental collected from Plaintiff and Class Members.

**ANSWER**:  **Defendants admit only that their advertisements speak for themselves. Defendants deny any allegations that are inconsistent with or mischaracterize the advertisements.  Defendants deny the allegations in Paragraph 164.**

165.    Continental is not exempt from the MCSBA and does not qualify as any of the entities exempt from the MCSBA under MCSBA § 14-1901(e)(3). At no time relevant to the actions alleged in this Complaint was Continental licensed by the Commissioner of Financial Regulation under Title 11, Subtitle 3 of the Financial Institutions Article of the Maryland Annotated Code. Nevertheless, Continental received money and other valuable consideration from

the consumer Plaintiff and Class Members, in violation of Md. Code Ann., Com. Law § 14-1902(1).

**ANSWER**:   **Defendants deny that the Class referenced in Paragraph 165 may be certified. Defendants deny the remaining allegations in Paragraph 165.**

166.    Furthermore, Continental received money and valuable consideration solely for the referral of Plaintiff and Class Members to a credit grantor when the credit extended to the Plaintiff and Class Members was substantially on the same terms as those available to the general public, in violation of MCSBA §14-1902(2).

**ANSWER**:   **Defendants deny that the Class referenced in Paragraph 166 may be certified. Defendants deny the remaining allegations in Paragraph 166.**

167.    Furthermore, Continental charged and received money or other valuable consideration in connection with extensions of credit to Plaintiff and Class Members that, when combined with the interest charged on the extensions of credit, exceeded the interest rate permitted for the extension of credit under the Maryland Financial Institutions Article, in violation of MCSBA § 14-1902(7). For example, the rates of interest set forth in Continental's documents filed in ECF # 13-2 for Plaintiff and Class Members exceed the interest rate permitted for the extension of credit under the Maryland Financial Institutions Article. In addition to those excessive interest rates, Continental also charged and received from Plaintiff and Class Members annual fees, monthly maintenance fees and other fees. When those charges are combined with the interest charged on the Plaintiff's and Class Members' extensions of credit, they exceeded the interest rate permitted for the extension of credit under the applicable title of the Maryland Commercial Law Article.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 167 may be certified. Defendants deny the remaining allegations in Paragraph 167.**

168.    Furthermore, Continental assisted the consumer Plaintiff and Class Members to obtain an extension of credit at a rate of interest which, except for federal preemption of State law, would be prohibited under Title 12 of the Maryland Commercial Law Article, in violation of MCSBA § 14-1902(9). For example, the rates of interest set forth in Continental's documents filed in ECF # 13-2 for Plaintiff and Class Members exceed the interest rate permitted for the extension of credit under the Maryland Financial Institutions Article.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 168 may be certified. Defendants deny the remaining allegations in Paragraph 168.**

169.    Despite the fact that Continental acted as a credit services business in the transactions of Plaintiff and Class Members, Continental has never had a license under the MCSBA, in violation of MCSBA § 14-1903(b).

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 169 may be certified. Defendants deny the remaining allegations in Paragraph 169.**

170.    In violation of MCSBA § 14-1903.1, Continental advertised the services of improving a consumer's credit record, history, or rating or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving the consumer's credit record, history, or rating or establishing a new credit file or record; or obtaining an extension of credit for a consumer, or providing advice or assistance to a consumer with regard to obtaining an extension of credit for the consumer, but did not conspicuously state in each such advertisement the license issued under MCSBA § 14-1903 or any exemption provided by the Commissioner of Financial Regulation.

**ANSWER**:  **Defendants deny the allegations in Paragraph 170.**

171.    Continental never provided to Class Representatives or any Class Member any of the disclosures required by the MCSBA §14-1906, and never provided Class Representatives or any Class Member the "NOTICE OF CANCELLATION" required under that section. For example, Continental never provided Plaintiff or Class Members a statement of their right to file a complaint under MCSBA § 14-1911. Continental never provided Plaintiff or Class Members the address of the Commissioner where a consumer can file a complaint under MCSBA § 14-1911. Continental never provided Plaintiff or Class Members a statement that a bond exists and the consumer's right to proceed against the bond under the circumstances and in the manner set forth under MCSBA § 14-1910.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 171 may be certified. Defendants deny the remaining allegations in Paragraph 171.**

172.    Continental attempted to have Plaintiff and Class Members waive rights given by the MCSBA by providing documents to them which purported to elect out-of-state law for their transactions, in violation of MCSBA § 14-1907.

**ANSWER**:  **Defendants deny that the Class referenced in Paragraph 172 may be certified. Defendants deny the remaining allegations in Paragraph 172.**

173.    Continental failed to obtain a surety bond, in violation of MCSBA § 14-1908.

**ANSWER**:  **Defendants deny the allegations in Paragraph 173.**

174.    Continental willfully violated the MCSBA and knew its conduct toward Plaintiff and Class Members violated the MCSBA or showed reckless disregard as to whether its conduct was prohibited by the statute. Among other things, the MCSBA prohibits exactly the conduct which Continental perpetrated in its transactions with Plaintiff and Class Members, and

Continental was aware at the time of its transactions with Plaintiff and Class Members that if Maryland law was applied to those transactions, they would be unlawful under the MCSBA.

**ANSWER**: **Defendants deny the allegations in Paragraph 174.**

175.    Continental's actions in violation of the MCSBA caused actual damages to Plaintiff and each Class Member, including damages in the amount of prohibited charges and sums which Continental was not legally permitted to assess, collect, or retain, but which Continental nevertheless did assess, collect, and retain from Plaintiff and Class Members. Those prohibited charges include all amounts collected by Continental from Plaintiff and Class Members.

**ANSWER**: **Defendants deny the allegations in Paragraph 175.**

WHEREFORE, Plaintiff demands declaratory judgment and judgment in an aggregated amount for the Class as a whole in excess of $75,000.00, as follows:

A.    A declaratory judgment establishing that Continental was required to be licensed by the Commissioner of Financial Regulation to undertake the actions alleged in this Complaint;

B.    A declaratory judgment establishing that Continental never had any right to collect any money from Plaintiff or Class Members, and that Plaintiff and Class Members' loans and agreements with Defendants are, and always were, void and unenforceable;

C.    A declaratory judgment establishing that Defendants never had any right to collect any money from Plaintiff or Class Members;

D.    Payment to Plaintiff and Class Members of the statutory damages imposed under MCSBA § 14-1912, including punitive damages;

E.     Pre-judgment and post-judgment interest at the legal rate on all sums awarded to Plaintiff and Class Members; and,

F.     Such other and further relief as the nature of this case may require.

**ANSWER**:  **Defendants deny that Plaintiffs are entitled to any relief. Defendants deny that the Class referenced in Paragraph 175 may be certified. Defendants deny the remaining allegations in Paragraph 175.**

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint as a whole, and each and every purported cause of action alleged therein, is barred by the doctrine of waiver.

### SECOND AFFIRMATIVE DEFENSE

The Complaint, and each and every purported cause of action contained therein, fails to state facts sufficient to constitute a cause of action against Defendants.

### THIRD AFFIRMATIVE DEFENSE

The Complaint as a whole, and each and every purported cause of action alleged therein, is barred by the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint as a whole, and each and every purported cause of action alleged therein, is barred because Plaintiff has selected an improper forum and must submit her claims to arbitration as provided in Plaintiff's cardholder agreement.

### FIFTH AFFIRMATIVE DEFENSE

The Complaint as a whole, and each and every purported cause of action alleged therein, is barred because Plaintiff attempts to bring a class action suit which is barred by the Plaintiff's cardholder agreement.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint as a whole, and each and every purported cause of action alleged therein, is barred because at all times relevant hereto, Defendants conducted themselves in conformity with all applicable laws and regulations.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, because Plaintiff has suffered no actual damages as a result of Defendants' alleged violations.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff lacks Article III standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, because Defendants have breached no duty of law owed to Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, because Defendants have at all times followed reasonable procedures to assure maximum possible accuracy of its servicing of Plaintiff's account.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, because Defendants never arranged loans or extended credit to consumer and accordingly, are not subject to the licensing requirement that Plaintiff bases the entirety of the Complaint on.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails, in whole or in part, because Plaintiff is not entitled to injunctive relief or a declaratory judgment against Defendants.

## <u>THIRTEENTH AFFIRMATIVE DEFENSE</u>

Defendants reserve the right to assert additional affirmative defenses, or to amend its present defenses, as further information becomes available.

Dated:  September 21, 2023                 Respectfully submitted,

*/s/ Melissa O. Martinez*
Melissa O. Martinez (Fed. Bar No. 28975)
**MCGUIREWOODS LLP**
500 East Pratt Street
Suite 1000
Baltimore, MD 21202
410-659-4400
410-659-4482 (Fax)
mmartinez@mcguirewoods.com

Brandi G. Howard (Md. Fed. Bar No. 21250)
**MCGUIREWOODS LLP**
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
202-857-2438
202-828-3338 (Fax)
bhoward@mcguirewoods.com

***Counsel for Continental Finance Company, LLC and Continental Purchasing LLC***

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on September 21, 2023, the foregoing copy of Continental Finance Company, LLC and Continental Purchasing, LLC's Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint was electronically filed via the Court's CM/ECF system and served on all counsel of record.

*/s/ Melissa O. Martinez*
Melissa O. Martinez